NEW ORLEANS CANAL AND BANKING COMPANY, APPELLANTS, *v.* JOSIAH S. STAFFORD AND JENANETTA KIRKLAND, HIS WIFE.

The principles established in the preceding case of the Union Bank of Louisiana, against Stafford and wife, again affirmed.

THIS was an appeal from the District Court of the United States for the District of Texas.

Although the complainants were not the same as in the preceding case of the Union Bank of Louisiana *v.* Stafford and Wife, yet the respondents were the same and the subject-matter was a breach of the same transaction. The only difference is stated fully in the opinion of the court; and by agreement of parties the two cases were consolidated in the court below and to be argued together.

It was argued by *Mr. Crittenden,* (Attorney-General) for the appellants, and *Mr. Harris* for the appellees.

*Mr. Crittenden* contended,

1. That the court below erred in dismissing the bill for the want of proper parties, and cited 6 Wheat. 559; 10 Wheat. 167; 11 Wheat. 133, 134. Act of Congress, 28 Feb. 1839; 5 Stat. at Large, 321, sect. 1.

2. That there was no proof of Mrs. Stafford's minority, and if there were, that she afterwards confirmed the mortgage.

3. That there was no proof of her matrimonial or dotal rights or their amount.

4. That the statute of limitations could not apply. No court of equity would sanction a fraudulent removal of the property with a view to found a place of limitations upon it. 2 Story's Eq. 188, ch. 23, sect. 903. Eden on Injunctions, ch. 16, pp. 349, 350.

Mr. Justice GRIER delivered the opinion of the court.

The New Orleans Canal and Banking Company filed their bill in the District Court of the United States for Texas against Josiah S. Stafford and wife, setting forth that the bank by an act of contract of sale and mortgage made on the 12th of July, 1844, in the parish of Rapides and State of Louisiana, sold to William Mainer Stafford thirty-three negro slaves, which the bank had purchased at a sheriff's sale of the property of Isaac Thomas, at the suit of Adelia E. Flint. By this act of sale and mortgage, Wiliam M. Stafford covenanted to pay, as the price of the slaves, the sum of $12,853, with interest in eight annual instalments. That in addition to the vendor's privilege reserved on the slaves sold, William M. Stafford further mortgaged his interest in some other slaves which said Stafford had purchased on the 6th of November, 1843, at a sheriff's sale at the suit of the Union Bank of Louisiana. That Stafford agreed that in case any of the instalments were not paid when they severally became due, then the bank might obtain an order of seizure and sale, (or judgment in the ordinary way at their option) and sell the mortgaged premises to the highest bidder without benefit of appraisement. That the respondents, with full notice of this act of sale and mortgage and of the claims of the complainant, fraudulently removed and transported all the slaves to Texas, and now hold and detain them, and endeavor to scatter and secrete them, for the purpose of evading the just claims of complainant. That the slaves are now in possession of the court by a receiver in a certain suit pending between the Union Bank of Louisiana and the respondents. That four of the notes secured by complainant's mortgage are due and payable, and remain unpaid. That William M. Stafford has no property in Louisiana; that he resides in the State of Louisiana and without the jurisdiction of the court, and cannot therefore be made a party to the bill.

This bill was taken *pro confesso* against the husband. The wife filed an answer in which she admits the contract of sale and mortgage between the bank and William M. Stafford, but alleges a purchase of them by James A. M'Waters, who holds them by a deed of trust for her separate use. She claims that she is a *feme covert*, and that by the laws of Louisiana she has a lien upon all the slaves in the bill mentioned for the security of her matrimonial, dotal, and paraphernal rights, to the amount of $66,000. She admits the slaves were all brought to Texas except five, four of whom are dead, and that the others are now in possession or ordered to be delivered to a receiver appointed by the court at the suit of the Union Bank of Louisiana, and prays that the bill may be dismissed, because William M. Stafford, James A. M'Waters, and the Union Bank are not made parties to the bill.

To meet the allegation of matrimonial, dotal, and paraphernal rights, the complainants amended their bill and gave in evidence a mortgage by respondents, duly acknowledged to bar the rights of the wife, dated 11th May, 1836; and including the thirty-three slaves now in question, with some others. Also, that an order of seizure and sale of forty-five negroes, including these thirty-three, was regularly issued, and the slaves sold to General Isaac Thomas on the 8th of August, 1840.

That on the 15th of September, 1840, Thomas mortgaged them again to the bank to secure the payment of ten thousand dollars. That in November, 1842, Adelia E. Flint, by execution on a judgment which had a lien on the property of Thomas anterior to the mortgage of the bank, sold at sheriff's sale thirty-three of said negroes, which were purchased and paid for by the Canal Bank in 1844.

The amended answer of the wife sets up the defence, that she was a minor in 1836, and therefore the first mortgage to the bank was not valid to bind or affect her rights; she pleads, also, the statute of limitation of two years, averring that, since the slaves were brought to Texas, she has held them adversely to the claim of the mortgagee. But there is no evidence on the record to show that she was a minor in 1836, or that William M. Stafford sold the slaves in question to M'Waters, or that M'Waters had any title to them whatever. That the slaves were carried to Texas by respondent's husband clandestinely, to avoid the pursuit of creditors, is also satisfactorily proved.

The defences made on the argument in this court were:—

1. The minority of the plaintiff.

This was an allegation of the answer not responsive to the bill, and there was no proof to substantiate it.

The statement of a witness, in his cross-examination, that he

heard Stafford say his wife was not of age in 1836, was not responsive to any question proposed to him by the respondents, and is no evidence of the fact.

2. The charter of the Canal Bank, complainant, has a section in the same words with that which we have noticed in the opinion just delivered in the case of the Union Bank; and what we have said in that case, as to the power of the wife to join her husband in such securities to the bank, equally applies to the present case, and need not be repeated.

3. The plea of the statute of limitations has also been disposed of in the preceding case.

4. What was said in the previous case, as to the propriety of dismissing the bill for want of proper parties, equally applies to this.

The forty-five slaves sold to Thomas, including the thirty-three now in question, were never taken from the possession of respondents; and, though Thomas proves that he offered a reward of $500, he was unable to get information by which to distinguish or sever them from the other slaves in possession of respondents. Hence we see the reasons for these transfers to William M. Stafford, the younger brother of respondents, who was without means to pay; and the very liberal terms given by the bank were evidently for the purpose of favoring the defendants, and leaving the slaves in their possession.' We cannot shut our eyes also to the fact that respondents were the real actors and persons interested in all these manifold and complicated mortgages, sales, and transfers, which all seemed to have but one result, to wit, that the respondents kept possession of the slaves, and never paid their debts. And having clandestinely carried them away and attempted to scatter and conceal them from the pursuit of their creditors, it would be a reproach to a court of equity, if it could be truly said that it was unable to afford the complainants a remedy because the nominal and insolvent obligee in the mortgage lived in a different State from those who, in combination with him, have transported the mortgaged property within the bounds of a different jurisdiction.

The difficulty arising from the conflicting claims of the Union Bank can be settled by the court, as we have already shown in our opinion in that case. In fact, this bill is itself in the nature of an intervention, setting up the claim of complainants to property already in possession of the court. And the court have it fully in their power to compel the banks to interplead with one another as to the priority of their lien or rights to the property or its proceeds; as each of them has shown a right to a decree as against the title of the respondents, they will be indifferent as to the result, unless the property shall produce more than sufficient to pay both mortgages.

The decree of the District Court is therefore reversed, and the record remitted with directions to enter a decree in favor of complainant, and cause such other proceedings as to justice and equity may appertain.

## Order

This cause came on to be heard on the transcript of the record from the District Court of the United States for the District of Texas, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby reversed with costs; and that this cause be, and the same is hereby remanded to the said District Court, with directions to that court to enter a decree in favor of the complainant, and for such further proceedings to be had therein as to law and justice may appertain.